# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| RYAN ZURAKOV, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> THE CBE GROUP INC., <br><br> Defendant. | Case No.: 19-cv-480 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1.  This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.  The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.  Plaintiff Ryan Zurakov is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.  Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes, namely medical services.

5.  Plaintiff is also a "customer" as defined the WCA, Wis. Stat. § 421.301(17), in that Plaintiff engaged in a consumer credit transaction.

6. Defendant The CBE Group, Inc. ("CBE") is a foreign corporation with its primary offices located at 1309 Technology Parkway, Cedar Falls, IA 50613.

7. CBE does substantial business in Wisconsin and has designated its registered agent in Wisconsin for the service of process as Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

8. CBE is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. CBE is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. CBE is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about November 13, 2018, Plaintiff was mailed an account statement referencing an alleged debt owed to "CREDIT FIRST N.A." ("Credit First"), associated with a "Tires Plus" store-branded credit card account with an account number ending in 5309. A copy of this account statement is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, which was used only for personal, family, and household purposes, including the purchase of personal automotive goods and services.

2

13. <u>Exhibit A</u> includes the following representations:

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $874.64 |
| Minimum Payment Due | $379.00 |
| Payment Due Date | 12/08/2018 |
| **Late Payment Warning:** If we do not receive your minimum payment by the Payment Due Date, you may have to pay a Late Payment Fee of as much as $35.00. | |
| **Minimum Payment Warning:** If you make only the minimum payment each month, you will pay more in interest and it will take you longer to pay off your balance. For example: | |

| If you make no additional charges using the card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $1,100.00 |

If you would like information about credit counseling services, call: 1-800-848-8117

. . .

| SUMMARY OF ACCOUNT ACTIVITY | | |
|---|---|---|
| Previous Balance | | $860.07 |
| Payments | − | $0.00 |
| Other Credits | − | $0.00 |
| Purchases / Debits | + | $0.00 |
| Fees Charged | + | $0.00 |
| Interest Charged | + | $14.57 |
| New Balance | | $874.64 |
|    Promotional Balance | | $0.00 |
|    Revolving Balance | | $874.64 |
| Minimum Payment Due | | $379.00 |
|    Current Pay Amount | | $35.00 |
|    Past Due Amount | | $344.00 |
| Credit Limit | | $0.00 |
| Available Credit (subject to change) | | $0.00 |
| Statement Closing Date | | 11/13/2018 |

. . .

Please Include your Account Number on your Check or Money Order.
Do Not Send Cash. Do Not Fold, Tape or Staple Payment to Remittance Stub.

| ACCOUNT NUMBER | BALANCE | MINIMUM AMOUNT DUE | PAYMENT DUE DATE | AMOUNT ENCLOSED |
|---|---|---|---|---|
| ▇▇▇5309 | $874.64 | $379.00 | 12/08/2018 | $_____ |

Go Paperless! Pay online at www.CFNA.com

Make Check Payable To: Credit First, N.A.

Or Pay By Phone: 1-800-321-3950

3

14. <u>Exhibit A</u> thus states that, as of November 13, 2018, the account had a "New Balance" of $874.64, with a "Payment Due Date" of December 8, 2018, a "Minimum Payment Due" of $379.00 and an "Amount Past Due" of 344.00.

15. On or about December 4, 2018, CBE mailed Plaintiff a debt collection letter regarding the same alleged debt owed to Credit First, associated with the same store-branded credit card account with an account number ending in 5309. A copy of this letter is attached to this complaint as <u>Exhibit B.</u>

16. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

17. Upon information and belief, <u>Exhibit B</u> is a form debt collection letter, generated by computer, and used by CBE to attempt to collect alleged debts.

18. Upon information and belief, <u>Exhibit B</u> was the first letter that CBE sent to Plaintiff with respect to the alleged debt referenced in <u>Exhibit B</u>.

19.     Exhibit B includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

20.     Additionally, Exhibit B includes the following representations:



21.     Exhibit B, mailed on December 4, 2018 thus represents that the "Total Amount Due" is the full balance of the account and fails to indicate that Plaintiff could return the account to a current status by making a minimum payment.

22.     By representing the full balance as the "Total Amount Due," Exhibit B is false, deceptive, and misleading as to the character, amount, and legal status of Plaintiff's alleged debt.

23.     Upon information and belief, the acceleration clause in the underlying credit agreement governing the alleged debts referenced in Exhibits A & B provided for *optional* acceleration upon the consumer's default.

5

24. Exhibit A does not state that the consumer must pay the unpaid balance immediately. Instead, Exhibit A states that the consumer can avoid acceleration and return the account to a current status by tendering the minimum payment amount on or before December 8, 2018, the payment due date.

25. Exhibit A also states that the creditor would not exercise its rights under the optional acceleration clause until, at the earliest, December 8, 2018.

26. Conversely, Exhibit B represented that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

27. By mailing the account statement, Exhibit A, Credit First waived its right to accelerate the maturity of the account before December 8, 2018, and as of December 4, 2018, when CBE mailed its letters, Credit First had not exercised the optional acceleration clause.

28. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that the "Total Amount Due" is equal to the total balance of Plaintiff's alleged debt while Exhibit A indicate that only a "Minimum Payment Due" is due to the creditor as of the date of the letter. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' ").

29. Plaintiff was misled and confused by Exhibits A & B.

30. The unsophisticated consumer would be misled and confused by Exhibits A & B.

### *The FDCPA*

31. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix*

*APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); Quinn v. Specialized Loan Servicing, LLC, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v.*

*Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

32. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

33. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

34. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

35. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

36. 15 U.S.C. § 1692g(a)(1) requires that a debt collector to provide, within five days after the initial communication with the consumer in connection with the collection of any debt, written notice containing "the amount of the debt."

### *The WCA*

37. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

38. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

39. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

40. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

41. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

42. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

43. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

44. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

45. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

46. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

47. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

48. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

49. Exhibit B contains false, deceptive, misleading, and confusing representations as to the amount, character, and legal status of the debt.

10

50. Exhibit B overstates the amount due as of the date of Exhibit B.

51. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(1).

## COUNT II – WCA

52. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. Defendant is a licensed Collection Agency.

54. Exhibit B contains false, deceptive, misleading, and confusing representations as to the amount, character, and legal status of the debt.

55. Exhibit B overstates the amount due as of the date of Exhibit B.

56. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

57. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) for an account which had not yet been accelerated, (f) where the letter was sent between April 2, 2018 and April 2, 2019, inclusive (g) and was not returned by the postal service.

58. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

59. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

60. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

61. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

62. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

63. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 2, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110

(414) 482-8000  
(414) 482-8001 (fax)  
jblythin@ademilaw.com  
meldridge@ademilaw.com  
jfruchter@ademilaw.com  
bslatky@ademilaw.com